IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TIMOTHY SHANE FOWLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  2:13-CV-105-WKW |
| | ) | [WO] |
| DENNIS MEEKS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case involves federal-law claims and supplemental state-law claims. Before the court are five motions:  (1) Defendant City of Andalusia's Motion to Dismiss for Failure to State a Claim (Doc. # 33); (2) Defendant Dennis Meeks's Motion to Dismiss (Doc. # 36); (3) Defendant Covington County Drug Task Force's Motion to Dismiss (Doc. # 38); (4) Defendant Covington County's Motion to Dismiss (Doc. # 42); and (5) Defendant Mark Odom's Motion to Dismiss (Doc. # 48).  Plaintiff filed an opposition to the motions (Doc. # 57), and Defendants Covington County, Covington County Drug Task Force, and City of Andalusia filed reply briefs.  (Docs. # 58 & 59.)  The issues are fully briefed.  After careful consideration of the arguments of counsel, the appropriate law, and the allegations set forth in the twice-amended complaint, the court finds that the motions are due to be granted in part and denied in part.

# I. JURISDICTION AND VENUE

The court has subject matter jurisdiction over Plaintiff's federal-law claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367. Personal jurisdiction and venue are uncontested.

# II. STANDARDS OF REVIEW

## A. Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] .

. . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard also "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555.

**B.**   **Rule 12(b)(1)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). On a Rule 12(b)(1) facial attack, the court evaluates whether the complaint "sufficiently allege[s] a basis of subject matter jurisdiction," employing standards similar to those governing Rule 12(b)(6) review. *Id.*

## III.  BACKGROUND

**A.**   <u>**Facts**</u>

Because the court must accept the allegations of the complaint as true at this stage of the litigation, the following facts may not be the "actual facts." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006).

In the early evening of May 9, 2012, Plaintiff Timothy Fowler pulled into the driveway of a home to perform septic tank services for which he had been hired.  Before Plaintiff could exit his vehicle, as many as thirty law enforcement officers wearing masks and brandishing guns descended on Plaintiff.  Multiple officers, including Defendant David Harrell, snatched Plaintiff from his vehicle, and "brutally and violently" slammed him onto the ground, face-down "with a gun pointed to his head."  (2d Am. Compl. ¶ 12.)  Because of a birth defect, Plaintiff has no protective muscular covering over his intestines and other abdominal organs.  As a result of this condition, his intestines and abdominal organs bulge from his abdomen, encased in a large omphalocele (umbilical hernia). The condition is readily apparent even upon a cursory glance at Plaintiff.

While Plaintiff lay on the ground, law enforcement officers kicked and beat him repeatedly.  During this seizure, Plaintiff "made no attempts to escape or resist being detained."  (2d Am. Compl. ¶¶ 12, 14.)   Even after the officers handcuffed Plaintiff, they "continued to kick [him] while he was held down on his stomach."

(2d Am. Compl. ¶ 16.)  When Plaintiff cried in protest and tried to call attention to his condition, an officer threatened him at gunpoint.  Law enforcement officers did not discover the omphalocele and the associated protruding organs until after they turned Plaintiff over to search his pockets.  After searching Plaintiff's vehicle and person, law enforcement officers allowed Plaintiff to leave.  They did not charge him with a crime.

Plaintiff alleges that the officers involved in this assault were members of the Covington County Drug Task Force.  The Task Force included officers with the City of Andalusia Police Department and the Covington County Sheriff's Department.  Defendant Mark Odom, a deputy sheriff and the Task Force commander, and Defendant Dennis Meeks, the Sheriff, were present during the assault.

## B.   **Procedural History**

Plaintiff filed this action on February 20, 2013.  In his second amended complaint (Doc. # 29), which is the operative complaint, Plaintiff names the following defendants: (1) Covington County Sheriff Meeks, individually and in his official capacity; (2) Covington County Drug Task Force; (3) Deputy Sheriff Odom, individually and in his official capacity as a member of the Covington County Drug Task Force; (4) David Harrell, individually and in his official

capacity as a member of the Covington County Drug Task Force;[1] (5) Covington County; and (6) the City of Andalusia.[2]  Plaintiff amended his original complaint to add Defendant David Harrell on March 1, 2013.  (Doc. # 7.)  On April 1, 2013, Plaintiff filed a motion to file a second amended complaint (the operative complaint), which the court granted on April 4, 2013.  (Docs. # 25, 26.)

In the operative complaint, Plaintiff asserts the following claims: (1) Count I, a 42 U.S.C. § 1983 Fourth Amendment excessive force claim, against all defendants in their individual and official capacities (where applicable); (2) Count II, a § 1983 Fourteenth Amendment due process claim, against Defendants Meeks, Odom, and Harrell in their individual and official capacities, and against the Covington County Drug Task Force; (3) Count III, a state-law claim of assault and battery, against Defendants Odom and Harrell in their individual and official capacities, and against Covington County Drug Task Force; (4) Count IV, a state-law claim of gross negligence and wantonness, against Defendants Odom and Harrell in their individual and official capacities, and against Covington County Drug Task Force and perhaps against the City of Andalusia; and (5) Count V, a

---

[1] The record is unclear whether Defendant Harrell is a deputy sheriff, an Andalusia police officer, or an officer for some other agency.

[2] Plaintiff named other Defendants, including "unnamed Covington County Sheriff's Deputies, acting in their individual and official capacities as members of the Covington County Drug Task Force and Covington County Sheriff's Department" and "City of Andalusia Police Officers, acting in their individual and official capacities as members of the Covington County Drug Task Force and the City of Andalusia Police Department," but for one reason or another, these Defendants are no longer part of this lawsuit.  (*See, e.g.*, docket text entry, Apr. 8, 2013.)

state-law claim of negligence, against all Defendants in their individual and official capacities (where applicable).

Defendant David Harrell did not file a motion to dismiss but instead answered the operative complaint.  (Doc. # 44.)

## IV.  DISCUSSION

The discussion proceeds in three parts.  Part A addresses several preliminary matters.  These matters pertain to Plaintiff's Fourteenth Amendment claim (Count II) and the claims against the Covington County Drug Task Force, Covington County, Meeks and Odom.  Part B analyzes the remaining federal-law claim (Count I) as to each defendant.  Part C addresses the state-law claims.

## A.   Preliminary Matters

### 1.  *Plaintiff's Fourteenth Amendment § 1983 claim in Count II cannot be sustained as a matter of law.*

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quotations omitted).   "All claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other seizure . . . should be analyzed under the Fourth Amendment."  *Graham v. Conner*, 490 U.S. 386, 396 (1989).

Based upon *Graham*, the Fourth Amendment provides an explicit textual source protecting Plaintiff from excessive force during a seizure. It is the guide for analyzing Plaintiff's claim, and Count I raises this Fourth Amendment claim. Accordingly, Count II, which relies on the Fourteenth Amendment, will be dismissed.

**2. *Defendant Covington County Drug Task Force[3] is not a legal entity subject to suit and thus, is due to be dismissed.***

The Covington County Drug Task Force argues that it is not a suable entity. (Doc. # 39, at 6–7.) "Whether a party has the capacity to be sued is determined by the law of the state in which the district court sits." *Faulkner v. Monroe Cnty. Sheriff's Dep't*, 523 F. App'x 696, 700 (11th Cir. 2013) (citing *Dean v. Barber*, 951 F.2d 1210, 1214–15 (11th Cir. 1992)). It is well established under Alabama law that a drug task force is not a "legal entity subject to suit or liability under section 1983." *Edwards v. Florala, Ala. Police Dep't*, No. 2:06-CV-214, 2006 WL 1467038, at *1 (M.D. Ala. May 25, 2006) (citing *Dean*, 951 F.2d at 1214).

In his response, Plaintiff has not cited any authority for his position that the drug task force is a legal entity capable of being sued. Plaintiff's emphasis that the drug task force operates as "a separate legal entity" does not answer the question

---

[3] Plaintiff misidentified this entity. According to Defendants, its proper name is the Twenty-Second Judicial Circuit Drug Task Force.

whether it has the capacity to be sued under Alabama law.  Based on the available authority, all claims against the drug task force will be dismissed.

**3.  *Defendant Covington County[4]cannot be liable for actions of the sheriff and deputies under either federal or state law.***

Plaintiff names Covington County in Count I (Fourth Amendment) and Count V (state-law claim of negligence) seeking to hold the County liable for the alleged unconstitutional and tortious conduct of the task force members involved in Plaintiff's arrest.  Covington County argues that it cannot be held liable for the unconstitutional or tortious acts of the sheriff or his deputies because these individuals work for the state.  (Doc. # 43, at 6–8.)  Plaintiff does not address this argument head on.  Rather, he contends that Covington County created a task force consisting of a sheriff, deputy sheriffs, and city police officers, but failed to train its members with respect to the "proper procedure regarding the appropriate use of force, particularly the use of force against those with visible physical handicaps . . . ."  (Doc. # 57, at 14.)  Plaintiff also argues that Covington County "failed to provide adequate funding for the necessary training to ensure such a policy to protect those subject to the force of its organization conducting paramilitary operations."  (Doc. # 57, at 14.)  Both of Plaintiff's arguments lack merit.

---

[4] Plaintiff also refers to this defendant as the Covington County Commission.  (*See, e.g.*, 2d Am. Compl. ¶ 7.)

First, the County is the wrong defendant for purposes of imposing liability for the acts of Sheriff Meeks and Deputy Sheriff Odom.  "Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties."  *McMillian v. Monroe Cnty.*, 520 U.S. 781, 793 (1997) (holding that under § 1983, an Alabama sheriff is a policymaker for the state, not for the county); *Parker v. Amerson*, 519 So. 2d 442, 442 (Ala. 1987) ("A sheriff is not an employee of a county for purposes of imposing liability on the county under a theory of respondeat superior."); *see also* Ala. Const. art. V, § 112 (categorizing a sheriff as an officer of the state executive department).  Based upon the explicit authority under Alabama and federal law establishing that Sheriff Meeks is not a policymaker for Covington County, the § 1983 claim (Count I) against the County is due to be dismissed.

To the extent that Plaintiff rests his § 1983 claim on Covington County's failure to train Deputy Odom, the motion to dismiss likewise is due to be granted. Deputy sheriffs, like sheriffs, "are executive officers of this State."  *Ex parte Sumter Cnty.*, 953 So. 2d 1235, 1239 (Ala. 2006); *see also McClure v. Houston Cnty.*, 306 F. Supp. 2d 1160, 1164 (M.D. Ala. 2003) (finding that a § 1983 claim against Houston County for failure to train a deputy sheriff was not appropriate because "Houston County does not supervise deputy sheriffs at all").  Plaintiff has

not cited any authority that Covington County is charged under Alabama law with training a deputy sheriff.

Plaintiff also sues the County for negligence on a theory of respondeat superior. But "[a] sheriff is not an employee of a county for purposes of imposing liability on the county under a theory of respondeat superior." *White v. Birchfield*, 582 So. 2d 1085, 1087 (Ala. 1991) (quoting *Parker v. Amerson*, 519 So. 2d 442, 442 (Ala. 1987)). And neither is a deputy, who is the sheriff's alter ego. *Ex parte Sumter Cnty.*, 953 So. 2d at 1239. The County, thus, is not liable for any negligence by the sheriff or his deputies during Plaintiff's arrest.

Plaintiff emphasizes, however, that the sheriff, deputy sheriff, and police officers were part of a "county" task force consisting of multiple law enforcement agencies. But membership on a task force cannot alter the Alabama Constitution and clear authority demonstrating that a sheriff and deputy sheriff are state officers over whom a county has no control with respect to law enforcement functions. Absent any authority that the County can be held liable for the tortious or unconstitutional acts of a sheriff or deputy sheriff under the circumstances presented in the Second Amended Complaint, Plaintiff's argument must fail.

The same result is mandated with respect to the County's liability for the alleged unconstitutional and tortious acts of the task force's police officers. They

work for the City of Andalusia, not the County.  *Moore v. Crocker*, 852 So. 2d 89, 90 (Ala. 2002) (providing that the City employed the police officer).

Second, as to Plaintiff's funding argument, the only duties imposed upon counties to fund any aspect of law enforcement deal with funding for building county jails and for providing food, clothing, bedding, and medical care to indigent inmates.  Ala. Code §§ 11-14-10, 14-6-19 (1975).  "A county is an instrumentality of the state of Alabama and is authorized to do only those things permitted or directed by the legislature of Alabama."  *Sanders v. Miller*, 837 F. Supp. 1106, 1109 (N.D. Ala. 1992) (citing *Lockridge v. Etowah Cnty. Comm'n*, 460 So. 2d 1361 (Ala. Civ. App. 1984)).  In *Sanders*, the plaintiff failed to demonstrate "any legislative enactment which empowers [the county] to perform any aspect of the law enforcement function otherwise delegated by statute as to the county sheriff."  *Id.*  The *Sanders* court granted the county's motion to dismiss.  *Id.*  Plaintiff has cited no contrary authority that Covington County has a statutory or other obligation to fund training for the task force, as Plaintiff alleges, and, thus, this argument is rejected based upon the clear authority above.

Accordingly, Covington County is not liable for the Fourth Amendment and state-law negligence claims in Counts I and V.  Covington County's motion to dismiss is due to be granted.

12

**4.  *Sheriff Meeks and Deputy Sheriff Odom are due to be dismissed from this action.***

Sheriff Meeks and Deputy Sheriff Odom move for dismissal of Counts II, III, IV, V, and all official-capacity claims (including those in Count I) on Eleventh Amendment immunity grounds.[5]  In response, Plaintiff "does not oppose" the motion.  (Doc. # 57 at 18–19.)  Based upon Plaintiff's non-opposition and the authority relied upon by Meeks and Odom, the individual- and official-capacity claims against Meeks in Counts II and V and against Odom in Counts II, III, IV, and V will be dismissed, as will the official-capacity claims against Meeks and Odom in Count I.  Plaintiff's suit against these two defendants proceeds, therefore, only as to the individual-capacity claims in Count I.

**5.  *Summary***

In Part A.1, Count II was dismissed as to all Defendants.  Defendants Covington County Drug Task Force and Covington County were dismissed in Parts A.2 and A.3, respectively.  Part A.4 dismissed Counts II, III, IV, and V in their entirety against Defendants Meeks and Odom, and the official-capacity claims in Count I against Defendants Meeks and Odom.  The court will proceed to analyze the remaining federal- and state-law claims in Parts B and C.

---

[5] Meeks is named in Count I, II, and V.  Odom is named in Counts I, II, III, IV, and V.

**B.   Remaining Federal-Law Claim**

### 1. *Plaintiff's Fourth Amendment § 1983 excessive force claim alleged in Count I remains against Defendants Meeks and Odom in their individual capacities and against City of Andalusia.*

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306 (11th Cir. 2009) (quotations omitted).  When analyzing a § 1983 excessive force claim, the court is to "balance the necessity of the use of force against the arrestee's constitutional rights," aided by "several factors, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 1305–06 (quotations omitted).

### a.  Individual Defendants in Their Individual Capacities

Neither Defendant Meeks nor Defendant Odom moves to dismiss Count I against him in his individual capacity.  (Docs. # 37, 49.)  Defendant Harrell did not file a motion to dismiss, but instead answered the complaint and denied liability. (Doc. # 21.)  Count I remains, therefore, as to Defendants Meeks and Odom in their individual capacities, and against Harrell.

### b. City of Andalusia

Plaintiff alleges in Count I that the City of Andalusia "violated [Plaintiff's] right to be free of [an] unlawful search and seizure due to [its] failure to train, supervise, and discipline [its] employees," which led to an "atmosphere of deliberate indifference." (Doc. # 29, at 11–12.) The gist of the City of Andalusia's argument is that Plaintiff cannot rely on a single incident of alleged excessive force to establish municipal liability and that Plaintiff's allegations contain merely a barebones reference to an unconstitutional custom or policy. (*See* Doc. # 34, at 16–24.)

"A city may only be held liable under 42 U.S.C. § 1983 when the injury caused was a result of municipal policy or custom." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009). This "may include a failure to provide adequate training if the deficiency 'evidences a deliberate indifference to the rights of [the city's] inhabitants.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). When a failure to train is at issue, a plaintiff must show "'that the municipality knew of a need to train . . . in a particular area and the municipality made a deliberate choice not to take any action.'" *Gilliam ex rel. Waldroup v. City of Prattville*, 667 F. Supp. 2d 1276, 1292 (M.D. Ala. 2009) (quoting *Gold v. City of Miami*, 151 F.3d 1246, 1350 (11th Cir. 1998)). This requirement is "intentionally onerous" to avoid permitting a municipality to suffer

*respondeat superior* liability. *Gold*, 151 F.3d at 1351 n.10. Notice may be established in two ways. "First, if the city is aware that a pattern of constitutional violations exists, and nevertheless fails to provide adequate training, it is considered to be deliberately indifferent." *Lewis*, 561 F.3d at 1293. Second, "deliberate indifference may be proven without evidence of prior incidents, if the likelihood for constitutional violation is so high that the need for training would be obvious" ("obvious need test"). *Id.*

A § 1983 failure-to-supervise claim is closely akin to a § 1983 failure-to-train claim. A plaintiff may prove that a failure to supervise is a city policy by demonstrating that the city's failure "evidenced a 'deliberate indifference' to the right of its inhabitants." *Gold*, 151 F.3d at 1350. Deliberate indifference requires proof that "the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Id.*

The Second Amended Complaint alleges that officers continued to exert force upon Plaintiff after he was handcuffed and that at no point did he resist the arrest. Moreover, Plaintiff alleges that when he attempted to inform the officers of his physical disability, he was threatened at gunpoint and that officers continued to kick and beat him despite his full cooperation.

However, even if these allegations are assumed sufficient to state an excessive force claim against a police officer, they are insufficient to attach

liability to the City of Andalusia for at least two reasons.  First, the Second Amended Complaint contains no plausible allegations that the City was aware of a need to train or supervise its officers on the use of non-deadly force in making arrests.  The alleged acts of excessive force could have been the result of a well-trained but one-time aberrant officer.  One has no way of knowing from the Second Amended Complaint's allegations.  There are no plausible allegations that any City police officer previously had engaged in an incident of excessive force or that, if there was such an incident, the City knew about it, but failed to follow up with appropriate training or supervision.

Second, there are no non-cursory allegations that the City knew of a prior substantiated complaint of excessive force by one of its officers or knew of a prior incident in which an individual's constitutional right to be free from the use of excessive force was violated.  (*See, e.g.* Doc. # 29 ¶ 22 (alleging that "inadequate supervision of . . . police units is so common and well-settled as to constitute a custom and practice . . .").)  And Plaintiff does not allege anything close to a "glaring omission" in the City's training program so as to establish the obvious need test.  *Gold*, 151 F.3d at 1352.  As stated by the court in *Gilliam ex rel. Waldroup v. City of Prattville*, the lone example cited by the Supreme Court as constituting a glaring omission is a city's failure to train its officers in the use of deadly force.  *Gilliam*, 667 F. Supp. 2d 1276, 1292 (M.D. Ala. 2009) (citing *City of*

*Canton*, 489 U.S. at 390).   Hence, as this court has observed, "The Eleventh Circuit has repeatedly rejected attempts to extend failure-to-train liability [for single incidents] to other law-enforcement situations, such as the use of 'hobble' restraints, responding to complaints about the use of handcuffs, and the identification and treatment of mentally ill inmates by jail staff." *Borton v. City of Dothan*, 734 F. Supp. 2d 1237, 1256 (M.D. Ala. 2010) (internal citations omitted). Based on Eleventh Circuit authority, the facts of this case do not fit within the "narrow range of circumstances" in which "a plaintiff might succeed without showing a pattern of constitutional violations."[6] *Gold*, 151 F.3d at 1352.

There simply are insufficient allegations to raise a plausible claim of municipal liability based upon a failure to train or supervise.  The court reaches this conclusion having liberally construed the Second Amended Complaint, accepted all well-pleaded facts as true, and made all reasonable inferences in favor of Plaintiff.  Accordingly, the City of Andalusia's motion to dismiss Count I is due to be granted.

## C.   <u>State-Law Claims</u>

Counts III, IV, and V allege state-law claims for assault and battery, gross negligence or wantonness, and negligence.  Only the City of Andalusia and Harrell

---

[6] Furthermore, Plaintiff makes no Rule 11(b)(3) allegations or comparable showing that discovery could reveal anything more. Fed. R. Civ. P. 11(b)(3). More specifically, he offers no argument that discovery would demonstrate that the City has the requisite knowledge of the need for training or supervision on the level of non-deadly force used to make an arrest.

remain as Defendants on the state-law claims.  Harrell did not file a motion to dismiss, so the analysis focuses on the City's motion to dismiss.

### 1.   *Count III*

Count III alleges that the City of Andalusia's officers committed assault and battery on Plaintiff.  (Doc. # 29 ¶ 39.)  Relying on § 11- 47-190 of the Alabama Code, the City of Andalusia argues that Alabama municipalities are immune from liability for the alleged willful, wanton, and malicious torts of their employees. (Doc. # 34, at 27–28.)  The City's argument has merit, and Plaintiff presents no contrary argument.  (*See* Doc. # 57.)  Based upon the authority cited by the City and Plaintiff's silence, Count III will be dismissed against this municipality.

### 2.   *Count IV*

Count IV asserts a state-law claim for gross negligence and wantonness. Count IV alleges that specified Defendants "(but excluding the City of Andalusia since it cannot be held liable for wantonness as a matter of state law) . . . committed gross negligence or wantonness on Plaintiff which proximately led to [his] injuries."  (Doc. # 29 ¶ 41.)   The City moves for dismissal of Count IV on three grounds.  First, it relies on the express language of the Amended Complaint (Doc. # 29, ¶ 41) excluding the City from Count IV.  Second and alternatively, the City points out that under Alabama law "[g]ross negligence is negligence, not wantonness," so arguably Count IV alleges a negligence claim against the City.

(Doc. # 34, at 29 (quoting *Smith v. Roland*, 10 So. 2d 367, 369 (Ala. 1942)).  The City argues that if a negligence cause of action remains against it in Count IV, it cannot survive Rule 12(b)(6) scrutiny because the allegations are "entirely conclusory." (Doc. # 34, at 29.)  Third, and again alternatively, the City contends that "[e]ven if Count 4 purported to assert a wantonness claim against the City of Andalusia, that claim would be barred by Alabama Code section 11-47-190." (Doc. # 34, at 30.)  In his response to the motion to dismiss, Plaintiff confirms that "Count Four does not pertain to the City of Andalusia."  (Doc. # 57, at 7.)

Based upon the express allegation in Count IV that excludes the City from its contours, in conjunction with Plaintiff's representation, it is clear that Plaintiff did not name the City in Count IV.  The City's motion to dismiss Count IV against the City of Andalusia is due to be denied as moot.

### 3.   *Count V*

Count V, which is titled, "Negligence," seeks compensatory damages against the City.   Count V alleges that "in investigating and apprehending" Plaintiff, the City of Andalusia "w[as] careless, unskillful and neglectful, and reckless and, as such, w[as] grossly negligent."[7]  (Doc. # 29 ¶ 43.)  The Complaint

---

[7] As mentioned in the preceding subsection, the Alabama Supreme Court has explained that "[t]he word 'gross,' when used in connection with the word 'negligence,' implies nothing more than simple negligence."  *Town of Loxley v. Coleman*, 720 So. 2d 907, 909 (Ala. 1998).  Accordingly, under Alabama law, Count V's allegations of gross negligence fall within the realm of simple negligence.  Additionally, to the extent that the word "reckless" in Count V implies

includes a number of allegations that the City's officers acted negligently when Plaintiff was assaulted during the course of his arrest (*see, e.g.*, Doc. # 29 ¶¶ 14, 18, 20), and Plaintiff contends that his claim in Count V against the City of Andalusia is based on *respondeat superior* liability with respect to the "careless, unskillful, and negligent" conduct of its police officers.  (Doc. # 57, at 8 (citing Doc. # 29 ¶ 43).)  The City argues that it is immune from any negligence claim under Alabama Code §§ 11-47-190 (municipal liability) and 6-5-338 (peace officer immunity).  (Doc. # 34, at 36–37.)  For the reasons to follow, neither statute provides grounds for dismissal at this time.

Section 11-47-190 provides, in pertinent part, that "[n]o city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality . . . ."  *Id.*; *see also Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 742–43 (11th Cir. 2010) ("§ 11-47-190 imposes respondeat superior liability on municipalities for employee negligence[.]" (citation and internal quotation marks omitted)).  The Alabama Supreme Court has recognized that an alleged use of excessive force may arise from an officer's "unskillfulness" within the meaning of § 11-47-190.  *City of Birmingham v. Thompson*, 404 So. 2d 589, 592 (Ala. 1981);

"wanton misconduct" by the City, the Alabama Supreme Court "has construed § 11-47-190 to exclude liability for wanton misconduct."  *Id.*

*see also Franklin v. City of Huntsville*, 670 So. 2d 848, 852 (Ala. 1995) ("As 'unskillful' is used in § 11-47-190, it means 'lacking in skill or proficiency' . . . . An assault and battery committed . . . because 'unskilled,' would be a negligent assault and battery because it would fall below that response which a skilled or proficient officer would exercise in similar circumstances." (quoting *Thompson*, 404 So. 2d at 592)). And late last year, the Alabama Supreme Court reiterated that § 11-47-190 does not prohibit "a cause of action against a municipality for negligence such as false arrest or false imprisonment . . . [or] for a city officer's negligently causing or allowing assault and battery." *Lee v. Houser*, ___ So. 3d ___, 2013 WL 6703454, at *9 (Ala. 2013) (citing *Thompson* and *Franklin*).

Here, Plaintiff alleges facts that at the very least amount to negligence, unskillfulness, or carelessness on the part of the City's police officers in investigating and arresting Plaintiff. These facts plausibly allege liability on the part of the City based upon its officers' "neglect, carelessness, or unskillfulness" so as to fall within § 11-47-190's exception to a city's immunity. Therefore, the court rejects the City's argument that it is immune from liability pursuant to § 11-47-190 for claims in Count V that are based upon the officer's alleged neglect, carelessness, and unskillfulness. Whether the evidence ultimately proves these allegations is a matter for scrutiny at a later stage after discovery. However, § 11-47-190 does not end the analysis.

Section 6-5-338(a) provides that "[e]very peace officer . . . shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." § 6-5-338(a).  And § 6-5-338(b) "explicitly extends an officer's immunity to the employing municipality." *Brown*, 608 F.3d at 742 (internal quotation marks omitted) (citing Ala. Code § 6-5-338(b) ("This section is intended to extend immunity only to peace officers *and governmental units or agencies* authorized to appoint peace officers." (emphasis added)).

The City contends that its Task Force police officers are immune from negligence claims under § 6-5-338(a) and that, therefore, it also is immune under § 6-5-338(b) for direct liability claims based upon its officers' alleged negligent conduct.  The City relies on *Howard v. City of Atmore*, 887 So. 2d 201 (Ala. 2003), in which the Alabama Supreme Court reiterated that "[i]t is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune." *Id.* at 211.  The City cites *Howard* for the proposition that "[a]lthough section 11-47-190 generally renders municipalities liable for the negligence of their employees within the scope of employment, section 6-5-338 eliminates that liability when the employee at issue is a police officer."  (Doc. # 34, at 37.)

However, in *Ex parte City of Tuskegee*, 932 So. 2d 895 (Ala. 2005), another

decision upon which the City relies, the Alabama Supreme Court recognized that even where a peace officer is engaged in an arrest, § 6-5-338(a) does not provide absolute immunity.  *Id.* at 906 n.6.  The Alabama Supreme Court noted, for example, that an officer making an arrest is not entitled to immunity under § 6-5-338 if he or she fails to follow "detailed rules or regulations, such as those stated on a checklist."  *Id.*  The Second Amended Complaint suggests that the City's task force officers failed to adhere to certain internal regulations pertaining to investigations and the use of force.  (2d Am. Compl., at 8.)  Although admittedly a close call, because these allegations, taken as true, are indicative of a failure to discharge duties pursuant to detailed rules or regulations, the motion to dismiss will be denied as to the City's immunity under § 6-5-338(b), and Count V will proceed to discovery.  The denial is without prejudice, and the City may raise this defense at a later stage of the proceedings, after discovery and factual development.  The denial also is consistent with the Alabama Supreme Court's preference for resolving State-agent immunity after discovery at the summary-judgment stage.[8]  *See Ex parte City of Tuskegee*, 932 So. 2d at 901–02; *see also*

---

[8] Plaintiff argues that § 6-5-338(a)'s immunity does not shield a police officer who acts willfully, maliciously, or in bad faith, and that the allegations detailing the beating Plaintiff endured are sufficient to deprive the City's police officers of § 6-5-338(a)'s immunity.  The City responds, however, that even if it is assumed that the allegations defeat State-agent immunity under § 6-5-338(a) based upon a showing of willfulness, malice, or bad faith, "a municipality is immune from such claims under § 11-47-190."  (Doc. # 58, at 14.)  The City has the better argument.  In *Ex parte Tuskegee*, the Alabama Supreme Court explained that § 11-47-190 "provides a municipality immunity from liability for the acts of its agents that are carried out in

*Hawkins v. City of Greenville*, 101 F. Supp. 2d 1356, 1362 (M.D. Ala. 2000) ("Alabama courts have determined that it is rare that a case involving discretionary function immunity will be disposed of on a motion to dismiss.").

Finally, with regard to Count V, Plaintiff argues in his responsive brief that he also brings a claim against the City for negligent failure to supervise and train its officers with respect to the use of force.  (Doc. # 57, at 9.)  The court agrees with the City that neither Count V nor any other count plausibly alleges such a claim (*see* Doc. # 58, at 20–22), and a plaintiff cannot amend his or her complaint through a statement in a brief.  *See Am. Fed'n of State, Cnty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 863 (11th Cir. 2013) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").  Plaintiffs' attempt to raise a negligent supervision and training claim against the City, therefore, is rejected.

### 4.    *Punitive Damages as to a Municipality*

Plaintiff requests punitive damages for each claim against the City.  (Doc. # 29 ¶¶ 33–43.)  The City of Andalusia argues that punitive damages are not

---

bad faith or with malice."  932 So. 2d at 910; *see also Hardy v. Town of Hayneville*, 50 F. Supp. 2d 1176, 1201 (M.D. Ala. 1999) (finding that "[t]he exception [to §6-5-338] which renders individual peace officers liable for 'willful or malicious conduct or conduct engaged in bad faith' would not apply to a municipality" . . . [because] [m]unicipalities are immune from claims based on such conduct." (citing Ala. Code § 11-47-190)).  *Ex parte City of Montgomery*, 99 So. 3d 282 (Ala. 2013), upon which Plaintiff relies, is distinguishable because there is no indication that the city invoked § 11-47-190, and the Alabama Supreme Court did not address that statute's effect on the municipality claims involving the alleged willful and malicious actions of the officers. *See id.* at 295–96, 298–99.

recoverable from a municipality under state law or § 1983.  (Doc. # 34, at 38.) Section 6-11-26 provides, in pertinent part, that "[p]unitive damages may not be awarded against the State of Alabama or any county or municipality thereof . . . ." Additionally, in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), the Supreme Court held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983."   *Id.* at 271.   Plaintiff has not refuted this authority. Accordingly, the City of Andalusia's motion to dismiss all punitive damages claims against it will be granted.

## V.  CONCLUSION

Based on the foregoing, it is ORDERED as follows:

(1)  Defendant Twenty Second Judicial Circuit Drug Task Force's Motion to Dismiss (Doc. # 38) is GRANTED, and all claims (Counts I, II, III, IV, and V) against the Twenty Second Judicial Circuit Drug Task Force are DISMISSED.

(2)  Defendant Covington County's Motion to Dismiss (Doc. # 42) is GRANTED, and all claims (Counts I and V) against the County are DISMISSED.

(3)  Defendants' motions are GRANTED as to Count II, and Count II is DISMISSED as to all Defendants (including against Harrell).

(4)   Defendant Sheriff Dennis Meeks's Motion to Dismiss (Doc. # 36) is GRANTED as to Count V and as to Count I against Meeks in his official capacity.

(5)   Defendant Mark Odom's Motion to Dismiss (Doc. # 48) is GRANTED as to Counts II–V and as to Count I against Odom in his official capacity.

(6)   Defendant City of Andalusia's Motion to Dismiss (Doc. # 33) is DENIED as moot as to Count IV, DENIED as to Counts I and V, and GRANTED as to the punitive damages claims.

This case proceeds with respect to Count I against Defendants Meeks and Odom in their individual capacities, against Harrell, and against Defendant City of Andalusia.  Counts III and IV remain against Defendant Harrell.  Count V remains against Defendant Harrell and Defendant City of Andalusia.

DONE this 23rd day of January, 2014.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE