IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TIMOTHY SHANE FOWLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:13-CV-105-WKW |
| ) | [WO] |
| DAVID HARRELL, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

The remaining claims in this case are federal and supplemental state-law claims arising out of allegations that Defendant David Harrell, a City of Opp police officer assigned to a drug task force, used excessive force in securing Plaintiff Timothy Shane Fowler during a drug raid. Before the court is Defendant Harrell's motion for summary judgment. (Doc. # 101.) Upon consideration of the motion, the briefs, and the evidentiary submissions of the parties, the court concludes that, as to some claims, there are genuine disputes as to the material facts and that the motion for summary judgment is due to be granted in part and denied in part.

**I. JURISDICTION AND VENUE**

The court has subject-matter jurisdiction over Plaintiff's federal-law claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367. Personal jurisdiction and venue are

uncontested.

## II. STANDARD OF REVIEW

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. *Jean–Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* Alternatively, a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. . . . [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact."). If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the

pleadings—that a genuine dispute material to each of its claims for relief exists. *Celotex*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

### III.  FACTS AND PROCEDURAL HISTORY

#### A.  Undisputed Facts

On the evening of Wednesday, May 9, 2012, Plaintiff drove his truck to a home to provide the homeowner with a quote for performing septic tank services at the residence. Plaintiff's girlfriend, Julie Brown, and Julie Brown's infant son, Ranger, were riding in the truck. (Doc. # 101-1 at 8.) Plaintiff and Julie Brown spoke with the homeowner briefly about the services to be performed, and Plaintiff provided an estimate. Plaintiff then began to drive away from the home. However, Plaintiff quickly discovered that the driveway was blocked as law enforcement officers descended on the property to execute a drug raid on the home.

Two officers, including Defendant Harrell, approached the driver's side of Plaintiff's truck with pistols drawn. (Doc. # 101-1 at 16-17; Doc. # 101-3 at 10.) Defendant Harrell knew that Plaintiff was not a member of the family who was suspected of running a meth lab in the house. (Doc. # 101-3 at 8.) Defendant

3

Harrell caused Plaintiff to exit the truck and to lie face down on the ground.[1] (Doc. # 101-1 at 16-17.) Plaintiff complied with all of Defendant Harrell's instructions and did not resist. Defendant Harrell did not have handcuffs with him, so another officer handcuffed Plaintiff. (Doc. # 101-1 at 19.) Approximately 45 minutes to an hour later, Plaintiff was released when the officers determined that he was not a suspect. (*See* Doc. # 75 at 3 (June 16, 2014 opinion of the Eleventh Circuit) ("There is no dispute that [Plaintiff] was not the subject of the raid, he did not attempt to resist the officers, and he was never arrested or charged with any crime.")).

Because of a birth defect, Plaintiff has no protective muscular covering over his intestines and other abdominal organs. As a result of this condition, his intestines and abdominal organs bulge from his abdomen, encased in a large omphalocele (umbilical hernia). The organs in the omphalocele are protected only by a layer of skin. (Doc. # 101-1 at 25.) Any contact or force to Plaintiff's stomach area is painful. (Doc. # 101-1 at 25.) At the time of the incident, Plaintiff was wearing a button-down shirt with two or three top buttons unfastened, a white t-shirt, shorts, and flip-flops. (Doc. # 101-1 at 22.) During the incident, Defendant Harrell did not see Plaintiff's omphalocele because Plaintiff was wearing a shirt.

---

[1] As explained in more detail in Parts III.B. and III.C., the parties dispute whether Defendant Harrell used physical force or only verbal commands to cause Plaintiff to get out of the truck and lie on the ground.

(Doc. # 101-3 at 7.)

Securing a compliant subject by physically throwing the subject to the ground and kicking a compliant subject are against drug task force policy. (Doc. # 101-6 at 7.)

**B.      Disputed Facts:  Plaintiff's Version**

According to Plaintiff, Defendant Harrell opened the door of Plaintiff's truck, "grabbed" Plaintiff's left arm, and "slung" him to the ground face down on his stomach. (Doc. # 101-1 at 17.)  Both Plaintiff and Julie Brown loudly told the officers that Plaintiff could not lie on his stomach because he had a medical condition. (Doc. # 101 at 17.)  Julie Brown pleaded with the officers not to hurt Plaintiff because of the medical condition. (Doc. # 101 at 17.)  One officer, whom Plaintiff testified that he "believed"[2] was Defendant Harrell, kicked Plaintiff in the

---

[2] According to Defendant Harrell, Plaintiff's deposition testimony that he "believed" that Defendant Harrell was the officer who kicked him is insufficient to overcome Defendant Harrell's unequivocal testimony that he did not kick Plaintiff.  Read in context, however, Plaintiff's deposition testimony is sufficient to create a genuine dispute for the trier of fact as to the identity of the officer who allegedly kicked him.  In context, Plaintiff identified Defendant Harrell as the officer who forced him to the ground and kicked him and also as the officer who could not handcuff Plaintiff because he did not have handcuffs.  (Doc. # 101-1 at 18-20.)  Consistent with Plaintiff's testimony, Defendant Harrell admits that he was the officer who secured Plaintiff on the ground, that he did not handcuff Plaintiff because did not have his handcuffs, and that another officer brought handcuffs and handcuffed Plaintiff.  (Doc. # 101-3 at 10-11.)  Moreover, elsewhere in his deposition testimony, Plaintiff testified unequivocally that Defendant Harrell was the one who "snatched" him from the truck, "threw [him] on the ground[,] and kicked [him]."  (Doc. # 101-1 at 21, 156.)  Drawing reasonable inferences in Plaintiff's favor and reading Plaintiff's testimony in context, the evidence reasonably supports the conclusion that, with some difficulty, Plaintiff was able to keep track of which officer was Defendant Harrell during the incident.  Defendant Harrell's challenge to the credibility of Plaintiff's testimony is an issue for the finder of fact and is not a proper subject for summary judgment.  *See Lane v. Celotex Corp.*, 782 F.2d 1526, 1528 (11th Cir. 1986).

left side and told him to "shut [his] f-----g mouth." (Doc. # 101-1 at 18.) Defendant Harrell did not have handcuffs, so another officer brought handcuffs, placed his knee in Plaintiff's back, and handcuffed him. (Doc # 101-1 at 21.)

Plaintiff then lay on his stomach for five or ten minutes until another officer walked over and acknowledged Plaintiff's requests to be allowed not to lie on his stomach because of his medical condition. (Doc. # 101-1 at 20.) That officer assisted Plaintiff to a pile of bricks, where Plaintiff was allowed to sit for approximately 45 minutes until he was released. (Doc. # 101-1 at 22-23.) Julie Brown was arrested on an outstanding warrant, and Ranger was released to Plaintiff's custody. (Doc. # 101-1 at 24, 26.)

As a result of being thrown to the ground, being forced to lie on his stomach, and being kicked, Plaintiff was in pain. (Doc. # 101-1 at 25.) On Friday, May 11, 2012, Plaintiff and a friend bailed Julie Brown out of jail. (Doc. # 101-1 at 26.) Plaintiff did not work that day because he was in pain and did not know if he was bleeding internally. (Doc. # 101-1 at 27.)

On Saturday, May 12, Plaintiff sought treatment at an emergency room because he was still in pain. (Doc. # 101-1 at 27.) Although Plaintiff was taking a Lortab prescription for pain, Plaintiff reported that his pain rated ten on a scale of one to ten. (Doc. # 101-2 at 2.) An emergency room doctor told Plaintiff that an X-ray revealed contusions on his liver that appeared to be the result of blunt force

trauma. (Doc. # 101-1 at 28.) The doctor told Plaintiff that it "looked like [Plaintiff] had been in a car wreck." (Doc. # 101-1 at 28.) Plaintiff explained that he had been "slammed" to the ground and "abused" by the police. (Doc. # 101-1 at 28; Doc. # 101-2 at 2, 17.) Plaintiff was given no medication because "there's not really [any]thing you can do for bruising." (Doc. # 101-1 at 28.) Plaintiff was instructed not to return to work until he had healed. (Doc. # 101-1 at 28.)

C.     **Disputed Facts:  Defendant Harrell's Version**

At his deposition, Defendant Harrell testified that he did not pull or yank Plaintiff from the vehicle, did not push or otherwise use physical force to cause Plaintiff to fall to the ground, and did not kick him. (Doc. # 101-3 at 7-8.) Instead, Defendant Harrell contends that he identified himself as a drug force task officer and informed Plaintiff that he was not being arrested, but merely detained. (Doc. # 101-3 at 12.) Defendant Harrell then merely asked Plaintiff to exit the truck and lie on the ground. (Doc. # 101-3 at 8-10.) Plaintiff was "completely" and "absolutely compliant with everything [Defendant Harrell] asked him to do" and never "complained of anything." (Doc. # 101-3 at 8-10.) Neither Plaintiff nor Julie Brown ever asked the officers to stop using force or said anything about Plaintiff having a medical condition. (Doc. # 101-3 at 8.)

Defendant Harrell could not handcuff Plaintiff because he did not have his handcuffs with him. (Doc. # 101-3 at 10.) Another officer found some handcuffs,

7

and, as that officer was handcuffing Plaintiff, Defendant Harrell walked away to secure the backyard of the home. (Doc. # 101-3 at 10-11.) Defendant Harrell did not see whether the officer who handcuffed Plaintiff placed his knee in Plaintiff's back. (Doc. # 101-3 at 11.) Plaintiff was "very compliant" and "was lying still on the ground" the entire time that Defendant Harrell observed him. (Doc. # 101-3 at 11.) According to Defendant Harrell, Plaintiff was "so compliant, there was no reason" to apply any force in securing him, to force him to the ground, or to "get on top of him or hold him down or anything." (Doc. # 101-3 at 13.)

Defendant Harrell believes that none of the officers present assaulted Plaintiff in any way. (Doc. # 101-3 at 9.) Defendant Harrell did not use force against anyone during the raid that day. (Doc. # 101-3 at 8.)

## D.  Procedural History: Pending Claims

Plaintiff filed this action on February 20, 2013, against Defendant Harrell and several other Defendants. All claims against the other Defendants have since been abandoned[3] or dismissed. (Doc. # 29; Doc. # 66; Doc. # 78; Doc. # 100.) As to Defendant Harrell, the following claims from Plaintiff's second amended complaint remain:

- Count One: a § 1983 claim for unreasonable search and seizure in violation of the Fourth Amendment (Doc. # 29 at 11-12);

---

[3] In his original complaint, Plaintiff named the Covington County Sheriff's Department as a Defendant. (Doc. # 1.) In his second amended complaint, Plaintiff did not name the Covington County Sheriff's Department as a Defendant. (Doc. # 29.)

8

- Count Three:[4] a state-law claim for assault and battery (Doc. # 29 at 12-13);

- Count Four: a state-law claim for "gross negligence or wantonness" (Doc. # 30 at 13-14);

- Count Five: a state-law claim for negligence (Doc. # 29 at 15-16).

## IV.   DISCUSSION

### A.   Count One:  § 1983 Claim That Defendant Harrell Used Excessive Force

To state a claim under § 1983, Plaintiff must establish that Defendant Harrell, acting under color of state law,[5] deprived him of "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983; *Blanton v. Griel Mem'l Psychiatric Hosp.*, 758 F.2d 1540, 1542 (11th Cir. 1985).  The Fourth Amendment to the United States Constitution prohibits the use of excessive force "in the context of an . . . investigatory stop of a free citizen." *Graham v. Connor*, 490 U.S. 386, 394 (1989). The Supreme Court's "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Id.* at 396.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable

---

[4] Count Two of the amended complaint, a § 1983 claim for deprivation of due process in violation of the Fourteenth Amendment, was dismissed as to Defendant Harrell on February 4, 2014.  (Doc. # 66 at 7-8, 26.)

[5] It is undisputed that Defendant Harrell acted under color of state law.

9

officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Thus, force is reasonable if "the officer['s] actions are 'objectively reasonable' in light of the facts and circumstances confronting [the officer], without regard to their underlying intent or motivation." *Id*. at 397. To determine whether force was objectively reasonable, the court looks to several factors, including the severity of the crime (if any), whether the suspect poses an immediate threat to safety, whether he is actively resisting or attempting to evade arrest, the need for the application of force, and the relationship between the need and amount of force used. *Mobley v. Palm Beach Cty. Sheriff Dep't*, 783 F.3d 1347, 1355 (11th Cir. 2015) (citing *Graham*, 490 U.S. at 396).

Qualified immunity protects officers acting within their discretionary authority[6] from being subject to a § 1983 excessive force suit against them in their individual capacities. *Lee v. Ferraro*, 284 F.3d 1188, 1193 (11th Cir. 2002). Qualified immunity protects the officer from suit unless his conduct violates a clearly established constitutional right. *Id*.

Defendant Harrell argues that there is no substantial evidence that he violated the Fourth Amendment because it is lawful to make an investigatory stop on the premises of a drug raid. However, Plaintiff does not contend that it was

---

[6] On summary judgment, it is undisputed that Defendant Harrell was acting within his discretionary authority. Therefore, Plaintiff has the burden of proof to show that Defendant Harrell violated a clearly established constitutional right. *Lee*, 284 F.3d at 1184.

unlawful to detain him; rather, he contends that Defendant Harrell used unreasonable force to effectuate the detention.

Defendant Harrell argues that he is entitled to summary judgment because there is no evidence that a Fourth Amendment violation occurred.  Specifically, Defendant Harrell argues that, according to his version of events,[7] he used no force at all.  (Doc. # 1 at 11.)  However, on summary judgment, "[t]he court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant." *Jean–Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010); *see also Lee*, 284 F.3d at 1197 ("In conducting [the qualified immunity] inquiry, we must first decide whether, taken in the light most favorable to [the plaintiff], the facts show that [the officer's] conduct violated a constitutional right; then, we determine whether the right violated was clearly established.").[8]  Thus viewed, the evidence reasonably supports the conclusion that Defendant Harrell threw Plaintiff to the ground and then, after Plaintiff protested that he had a medical condition and could not lie on his stomach, Defendant Harrell kicked him and told him to be quiet.  Defendant Harrell himself testified that Plaintiff was "so compliant, there

---

[7] Defendant Harrell acknowledges that his version of the incident materially differs from Plaintiff's.

[8] Since *Lee*, the United States Supreme Court has held that the two-step sequence described in *Lee*, which originated in *Saucier v. Katz*, 533 U.S. 194 (2001), while helpful, is not mandatory, and that courts are free to decide which of the two prongs of the qualified immunity analysis should be addressed first to resolve the case most efficiently.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

was no reason" to apply any force at all in securing him. (Doc. # 101-3 at 8-11, 13.) *Lee*, 284 F.3d at 1197 (holding that whether the force used was excessive is determined by whether a reasonable officer would have believed that the level of force used is necessary in the situation at hand).

Under the circumstances, there is a genuine dispute of material fact as to whether a reasonable officer in Defendant Harrell's position would have thought that the application of *any* force, and particularly the force he allegedly used, was reasonable. *See Thornton v. City of Macon*, 132 F.3d 1395, 1400 (11th Cir. 1998) ("Neither [plaintiff] was suspected of having committed a serious crime, neither posed an immediate threat to anyone, and neither actively resisted arrest. Yet, on the facts viewed in the light most favorable to the plaintiffs, the officers used force in arresting both [plaintiffs]. The officers grabbed [one plaintiff] and wrestled him to the ground, and threw [the other plaintiff] on the hood of one of the patrol cars before handcuffing him. Under the circumstances, the officers were not justified in using *any* force, and a reasonable officer thus would have recognized that the force used was excessive." (emphasis in original)).

Defendant Harrell argues that, "[a]lthough there is some discrepancy about what [Plaintiff] claims occurred compared to [Defendant] Harrell, when considering all facts and circumstances, the great weight of the evidence dictates that [Defendant] Harrell should be afforded qualified immunity because absent a

challenge to the detainment, *de minimis* force does not support a claim of a constitutional violation." (Doc. # 24 at 18.) Defendant Harrell's argument fails because it necessarily requires the court to weigh the evidence, which is not appropriate at the summary judgment stage. *See Lane v. Celotex Corp.*, 782 F.2d 1526, 1528 (11th Cir. 1986) (holding that, on summary judgment, "the district court must not resolve factual disputes by weighing conflicting evidence" because "it is the province of the jury to assess the probative value of the evidence").

Defendant Harrell argues that, at most, the evidence could reasonably support the conclusion that, in the course of securing the "absolutely" compliant Plaintiff during a drug raid, he threw Plaintiff to the ground and then, after Plaintiff lay still on the ground and stated that he had a medical condition and could not lie on his stomach, Defendant Harrell delivered "only one kick" to Plaintiff. Defendant Harrell argues that, at most, this was merely application of *de minimis* force that does not rise to the level of a constitutional violation. (Doc. # 102 at 24, 26.) Defendant Harrell argues that the conclusion that the force used was *de minimis* is supported by the medical record, which, according to Defendant Harrell, indicates that Plaintiff merely complained to the doctor about symptoms that were common to his medical condition.[9] (Doc. # 102 at 25.) However, viewed in the

---

[9] Defendant Harrell argues that Plaintiff went to the emergency room after he talked to a lawyer. Plaintiff's deposition testimony was that he went to a doctor after Julie Brown talked to "her uncle" about the situation, but that Plaintiff went to the emergency room because he was "still hurting" and "didn't know if [he] was bleeding internally or anything." (Doc. # 101-1 at

13

light most favorable to Plaintiff, the medical record shows that Plaintiff sought treatment as a result of pain that occurred after he was thrown to the ground and kicked, that his pain rated a ten on a scale of one to ten (ten being the highest), and that he was given morphine for the pain.  (Doc. # 101-2.)  Under the circumstances, at the summary judgment stage, there is a dispute of fact regarding whether the alleged kick from Defendant Harrell (delivered after both Plaintiff and Brown stated that Plaintiff had a medical condition) was more than *de minimis* force.

Defendant Harrell further argues that the record is devoid of evidence that any kick he might have delivered was intentional.  However, Plaintiff testified that, when he protested that he had a medical condition and could not lie on his stomach, Defendant Harrell kicked him and told him to "shut [his] f-----g mouth." (Doc. # 101-1 at 18.)  Viewed in the light most favorable to Plaintiff, the evidence reasonably supports the conclusion that the kick was a deliberate response to his protest about his medical condition.

Finally, Defendant Harrell argues that there was no applicable legal authority at the time of the incident that could have placed a reasonable officer on

---

27.)  Julie Brown's uncle was a retired attorney who told Plaintiff he should seek medical care because he was still in pain and that he should contact an attorney because he did not have insurance to pay for the medical bill. (Doc. # 105-1 at 18-19.)  Taken in the light most favorable to Plaintiff, this evidence explains that he waited to go to the emergency room for financial reasons despite being concerned about the possibility of serious injury.  In any event, Plaintiff's credibility is a matter for the factfinder, and is not an appropriate topic for disposition on a summary judgment motion.

notice that the Fourth Amendment prohibits slamming a compliant subject to the ground or kicking him while he is lying subdued and prostrate on the ground after he announces that he has a medical condition. However, both Defendant Harrell and his supervisor, Mark Odom, testified that Plaintiff was so completely compliant that *any* use of force was unnecessary. (Doc. # 101-3 at 8, 13; Doc. # 101-6 at 6.) Mark Odom also testified that throwing a compliant subject to the ground and kicking a compliant subject violate the law. (Doc. # 101-6 at 7.)

Under the circumstances, and in light of the disputed facts, the testimony of Defendant Harrell and Mark Odom that the use of force was unnecessary and illegal, and Plaintiff's testimony that he told Defendant Harrell about his medical condition before Defendant Harrell kicked him, Defendant Harrell is not entitled to a finding that, as a matter of law, a reasonable officer would not have known that the force allegedly used was excessive. *See, e.g., Saunders v. Duke*, 766 F.3d 1262, 1264 (11th Cir. 2014) ("We have repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands."); *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) ("Our cases hold that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force."); *Sheth v. Webster*, 145 F.3d 1231, 1238 (11th Cir. 1998) ("Under [the] plaintiff's allegations, [the arresting officer]


pushed her against a soda machine, handcuffed her, and dragged her to the police car. There is no evidence in the record to suggest that plaintiff posed a danger to the officer or others. Accordingly, because of the absence of any justification for [the officer']s use of force, application of the Fourth Amendment reasonableness standard 'would inevitably lead every reasonable officer . . . to conclude that the force was unlawful.' *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993).").

### B.     Count Three:   State Law Intentional Tort Claim for Assault and Battery

Under Alabama law, Defendant Harrell, as a city police officer, "shall at all times be deemed to be [an] officer[] of this state, and as such shall have immunity from tort liability arising out of his . . . conduct in performance of any discretionary function within the line and scope of his . . . enforcement duties." Ala. Code 1975 § 6-5-338(a). *See also Hollis v. City of Brighton*, 950 So. 2d 300, 309 (Ala. 2006) ("A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's [ . . . ] exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6–5–338(a), Ala. Code 1975.").

It is undisputed that Defendant Harrell was acting pursuant to his discretion as a law enforcement officer when he participated in securing Plaintiff for an investigatory stop.  However, Defendant Harrell is not subject to state-agent immunity under § 6-5-338 if Plaintiff can demonstrate that he acted "fraudulently, in bad faith, or with malice or willfulness."  *Moore v. Adams*, 754 So. 2d 630, 632 (Ala. 1999).  In this case, it is undisputed that, if Plaintiff was kicked, he was kicked when he was compliantly lying prostrate on the ground.  Plaintiff presents evidence that, when he protested that he had a medical condition and could not lie on his stomach, Defendant Harrell kicked him and told him to "shut [his] f-----g mouth."  (Doc. # 101-1 at 18.)  Defendant Harrell himself has testified that the use of such force was unnecessary.

Under the circumstances, there is a factual dispute as to whether Defendant Harrell acted maliciously, willfully, or in bad faith by intentionally kicking Plaintiff.  Therefore, Defendant Harrell is not entitled to summary judgment on state agent immunity grounds.  *See Gary v. Crouch*, 867 So. 2d 310, 313-14 (Ala. 2003) ("Peace-officer immunity, like State-agent immunity, does not provide immunity from liability for the commission of an intentional tort, but only for negligence in the exercise of judgment.").  *Cf. Ex parte City of Montgomery*, 99 So. 3d 282, 296 (Ala. 2012) (holding that an officer was not entitled to summary judgment on state-agent immunity when the plaintiff "presented evidence that,

when viewed, as it must be, in a light most favorable to [her]" indicated that, after the officer forced the plaintiff to the ground and determined that the plaintiff was unarmed, and after the plaintiff and others advised the officer that the plaintiff was disabled, the officer replied, "I don't give a f--- about her being disabled" and forced the plaintiff to remain on the ground while she was being bitten by ants).

## C. Counts Four and Five: Gross Negligence, Wantonness, and Negligence

Defendant Harrell argues that Plaintiff's claims for gross negligence, negligence, and wantonness are due to be dismissed on grounds that state agent immunity protects officers from actions for negligence and wantonness. *See L.S.B. v. Howard*, 659 So. 2d 43, 44 (Ala. 1995) (holding that state-agent "immunity protects a State agent from liability for negligence or wantonness while performing discretionary functions, but does not serve as a shield against liability for bad faith conduct"); *see also Ex parte Randall*, 971 So. 2d 652, 664 (Ala. 2007) (holding that "poor judgment or wanton misconduct, an aggravated form of negligence, does not rise to the level of willfulness and maliciousness necessary" to abrogate state-agent immunity).

As previously noted, it is undisputed that Plaintiff's negligence and wantonness claims arise out of a peace officer's function in detaining Plaintiff, a function that would ordinarily entitle him to state agent immunity. However, in response to Defendant Harrell's showing that Plaintiff's negligence and

wantonness claims arise out of a function that is protected by state-agent immunity, Plaintiff makes no attempt to demonstrate Defendant Harrell's allegedly negligent and wanton conduct was also willful, malicious, fraudulent, in bad faith, based upon a mistaken interpretation of the law, or beyond Defendant Harrell's authority, such as by a failure to discharge duties pursuant to detailed rules or regulations. *Giambrone v. Douglas*, 874 So. 2d 1046, 1052 (Ala. 2003) (holding that, where a defendant makes a showing that the plaintiff's claims arise from a function that would entitle the defendant to state-agent immunity, then the burden shifts to the plaintiff to establish that the defendant "acted willfully, maliciously, fraudulently, in bad faith, or beyond [his] authority").

Accordingly, Defendant Harrell is entitled to summary judgment on Plaintiff's claims of negligence and wantonness. *Id.* (holding that the plaintiff bears the burden of showing that an exception to state-agent immunity applies); *see also Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 182 F.3d 888, 892 (Fed. Cir. 1999) (noting that, when a plaintiff fails to oppose a summary judgment motion on a claim asserted in a complaint, the district court may properly treat the claim as abandoned and no longer an issue in the case); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to

19

formulate arguments; grounds alleged in the complaint but not relied upon in [opposition to] summary judgment are deemed abandoned." (citations omitted)).

## V.  CONCLUSION

Based on the foregoing, it is ORDERED:

(1) Defendant Harrell's motion for summary judgment (Doc. # 101) is GRANTED as to Plaintiff's claims of negligence and wantonness;

(2) Plaintiff's negligence and wantonness claims against Defendant Harrell are DISMISSED; and

(3) Defendant Harrell's motion for summary judgment (Doc. # 101) is DENIED as to Plaintiff's § 1983 claim and state law claim for assault and battery.

DONE this 18th day of February, 2016.

                                           /s/ W. Keith Watkins  
                              CHIEF UNITED STATES DISTRICT JUDGE